# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHENA THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-744-R |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Chena Thompson, also known as Chena Graves, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge David Russell has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 11, hereinafter "R.__"). The parties have briefed their positions, and the case is now ready for decision. For the reasons set forth below, it is recommended that the Commissioner's decision be AFFIRMED.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her application for SSI on June 28, 2010, alleging that

she was disabled as a result of ruptured discs in her back, bipolar disorder, anxiety, and depression. R. 189, 228, 232. After initial, administrative denials of Plaintiff's application, a hearing was held before an Administrative Law Judge ("ALJ") on December 1, 2011. R. 126, 129, 131, 136, 43-125. The ALJ issued an unfavorable decision on March 12, 2012. R. 20-42.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps); 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 28, 2010. R. 25. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, dysthymic disorder, generalized anxiety disorder, marijuana abuse, and obesity. R. 25-31. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 31-33.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 33-36. The ALJ found that Plaintiff:

> has the residual functional capacity to perform medium exertion work as defined in 20 CFR 416.967(c) restricted by: occasional climbing, stooping, and crawling; frequent balancing, kneeling and crouching; the claimant can perform simple tasks with routine supervision; can relate to supervisors and peers on a superficial work basis; can ad[a]pt to a work situation; but cannot relate to the general public.

R. 33. At step four, the ALJ found that Plaintiff had no qualifying past relevant work. R. 36; *see also* 20 C.F.R. § 416.965. At step five, considering the testimony of a vocational

2

expert, the ALJ determined that Plaintiff—in light of her RFC, age, education, and work experience—could perform jobs that exist in significant numbers in the national economy. R. 37-38. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 37-38.

Plaintiff's request for review by the Appeals Council was denied on June 4, 2013. R. 1-6. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its

own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action for judicial review, Plaintiff argues that the ALJ erred by not evaluating the treating source opinion of Adonis Al-Botros, M.D., and, specifically, failing to consider Dr. Al-Botros' assignment of a Global Assessment of Functioning ("GAF") score of 45. Pl.'s Br., Doc. No. 13, at 3-5.[1] Further, Plaintiff argues that the ALJ erred by not properly developing the record. *Id.* at 6-8.

A. *Whether the ALJ's Erred in His Consideration of Dr. Al-Botros' Medical Opinion and GAF Assessment*

Although Plaintiff testified that she had been seen by Dr. Al-Botros on a monthly basis for at least a year prior to the administrative hearing (i.e., from approximately December 2010 to December 2011), *see* R. 59, 111-12, the medical records reflect only two visits: the first on May 17, 2011, which is labeled an "Initial Psych Evaluation" (R. 354-55); and a second on June 24, 2011 (R. 353). At the first visit, Dr. Al-Botros diagnosed Plaintiff as having mood disorder and psychotic disorder (not otherwise specified) and assessed a GAF score of 45. R. 355. At the second visit, Dr. Al-Botros diagnosed Plaintiff as having mood disorder. R. 353.

The limited number of visits between Plaintiff and Dr. Al-Botros, and the fact that they occurred after Plaintiff had applied for disability benefits, call into question whether

---

[1] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n. 1 (10th Cir. 2007) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000).

4

Dr. Al-Botros was a treating physician within the meaning of the SSA's regulations. *See* 20 C.F.R. §§ 416.902, .917(c)(2).[2] Further, aside from Dr. Al-Botros' GAF assessment, Plaintiff does not point to—and the record does not reflect—any opinion by Dr. Al-Botros that the ALJ rejected and therefore was obligated to discuss. *See* Pl.'s Br. at 3-5; R. 350-55. Dr. Al-Botros' diagnosis of mood disorder and unspecified psychotic disorder are consistent with the ALJ's finding of a severe impairment of dysthymic disorder and generalized anxiety disorder. The ALJ thoroughly analyzed the evidence of the symptoms and functional limitations Plaintiff experiences as a result of her mental condition. R. 25-36. Dr. Al-Botros' treatment notes—with the arguable exception of the referenced GAF score, discussed below—do not reflect any findings of specific symptoms or limitations.[3] Thus, the ALJ was not obligated to expressly discuss and

---

[2] The regulation defining "treating source" states in relevant part:

> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.

20 C.F.R. § 416.902.

[3] At the hearing, the ALJ asked Plaintiff's representative: "I saw a letter from a Dr. Adonis Al-Botros, which simply listed [Plaintiff's] mental impairments and the medications that she was taking. As far as I could tell, Dr. Al-Botros didn't comment one way or the other on your client's ability to do work-related activities, either physical or mental. Did I overlook something . . . ?" R. 73. Plaintiff's representative answered: "No." R. 73.

assign any weight to any statements reflected in such notes, even assuming Dr. Al-Botros was a treating physician. *See* R. 350-55; 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."); SSR 96-2p, 1996 WL 374188 (July 2, 1996).

With respect to the ALJ's failure to expressly consider the GAF assessment made by Dr. Al-Botros, any such error was not prejudicial. A similar assertion was discussed by the Tenth Circuit in *Harper v. Colvin*, 528 F. App'x 887, 891-92 (10th Cir. 2012). In that case, the court held that an ALJ's failure to discuss a GAF assessment was harmless error, explaining:

> Dr. Cates' report does not identify anything specific that would indicate Harper had serious limiting effects aside from the GAF score of 49. Indeed, the GAF score is not linked to any particular symptoms at all. While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. And as identified above, the ALJ did not ignore Harper's depression or its effect on her. Rather, he took note of the symptoms and then identified specific medical evidence that indicated her symptoms did not have a severe limiting effect on Harper's ability to work. . . . There are no symptoms in Dr. Cates' report that undermine those findings.

*Harper*, 528 F. App'x at 891-92 (10th Cir. 2012) (citation and internal quotation marks omitted); *see also Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011) ("[A] low GAF score does not alone determine disability; rather, it is a piece of evidence to be considered with the rest of the record." (citation omitted)).

The same reasoning applies here. Dr. Al-Botros' assessment of a GAF score of 45 is not linked to any specific symptoms or functional limitations that would undermine the ALJ's findings. "[B]ecause the GAF score[] at issue [is] not linked to any work-related limitations, [it is] not particularly helpful." *Butler*, 412 F. App'x at 147. The ALJ noted the medications prescribed by Dr. Al-Botros and adequately analyzed the symptoms and limitations caused by Plaintiff's mental condition. *See* R. 34, 25-36. The ALJ's RFC assessment took into account Plaintiff's mental impairments by specifically limiting Plaintiff to simple, supervised tasks and restricting Plaintiff from interacting with the general public. *See* R. 33. Further, the ALJ expressly quoted and relied upon a record reflecting that Plaintiff had received a very similar GAF score of 48. R. 30, 36, 287. Because the ALJ's error in not expressly addressing the GAF score was harmless—i.e., "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"—reversal is not required. *See Harper*, 528 F. App'x at 892; *Keyes-Zachary v. Astrue*, 395 F.3d 1156, 1163, 1165 (10th Cir. 2012) (internal quotation marks omitted) (discerning no harmful error when the ALJ failed to specify the weight accorded to mental-status form, purportedly prepared by a treating physician, when the work-related limitations therein were not inconsistent with the RFC).[4]

---

[4] In an aside, Plaintiff argues that the ALJ erred in rejecting the opinion of Plaintiff's therapist, Jane F. Coldwell, LMFT. Pl.'s Br. at 5-6. The ALJ properly explained that his assignment of little weight to Ms. Coldwell's opinion was based on (a) the absence of contemporaneous treatment records; and (b) that Ms. Coldwell's opinion is not entitled to the same weight as "the Ph.D. doctors" because—as a licensed marriage and family therapist—her opinion is evaluated as that of an "other source" and not an "acceptable

7

*B. Whether the ALJ Erred in His Duty to Develop the Record*

Plaintiff argues that the ALJ erred by not independently obtaining additional medical records from Dr. Al-Botros and therapist Jane Coldwell. Pl.'s Br. at 6-7.

Plaintiff suggests in her brief that there are treatment records from Dr. Al-Botros dating to 2008. Pl.'s Br. at 6. In support of this suggestion, Plaintiff cites her testimony that she began seeing Dr. Al-Botros "[a]bout 2008." *Id.*; R. 111. However, Plaintiff also testified that she began seeing Dr. Al-Botros in <u>2009</u> and that she had been seeing him for approximately one year prior to the hearing, i.e., from December <u>2010</u> to December 2011. R. 112, 59. As mentioned above, Dr. Al-Botros' treatment notes reflect an "Initial Psych Evaluation" on May 17, 2011, *see* R. 354-55, which strongly implies that the reason no medical records were produced for Dr. Al-Botros for the period prior to May 17, 2011, is because that was the date he first encountered Plaintiff. Plaintiff has presented no documents or explanation that would counter such a conclusion either at the administrative level or to the Court. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

Regardless, the ALJ at the hearing independently raised to Plaintiff's representative the prospect of additional records from Dr. Al-Botros and suggested that Plaintiff obtain any such records and a medical source opinion statement from Dr. Al-

---

medical source." *See* R. 35; SSR 06-3p, 2006 WL 2329939, at *1-6 (Aug. 9, 2006); 20 C.F.R. § 416.913(d). Regardless, to obtain judicial review, it is insufficient for a party to "suggest dissatisfaction" or merely mention an issue in the context of another matter. *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994).

8

Botros.  R. 81-83, 112-15.  The ALJ similarly requested that Plaintiff obtain any additional existing records from Ms. Coldwell.  R. 73-75.  Plaintiff's representative stated that she would attempt to do so and did not request any assistance from the Commissioner for that purpose.  *See* R. 83, 75.  After the hearing, Plaintiff submitted a curriculum vitae and opinion letter from Ms. Coldwell (R. 356-57), but no treatment records from Ms. Coldwell and no records of any kind from Dr. Al-Botros.  The brief submitted by Plaintiff's successor representative, a licensed attorney, to the Appeals Council in support of review of the ALJ's decision cited record evidence, case law, and regulations but did not mention Dr. Al-Botros, Ms. Coldwell, or any need for further evidence to be taken.  R. 273-74; *see also* R. 14-15.  The record does not reflect any request by Plaintiff—to the ALJ at the hearing, to the ALJ after the hearing, or to the Appeals Council—for the Commissioner's assistance in obtaining any missing records.

In such circumstances, the ALJ was entitled to rely on Plaintiff and her representative to present Plaintiff's case and request—or forgo—assistance in obtaining evidence.  *See Maes v. Astrue*, 522 F.3d 1093, 1096-97 (10th Cir. 2008); *Sneed v. Barnhart*, 88 F. App'x 297, 299-301 (10th Cir. 2004); *Branum*, 385 F.3d at 1271-72.  While the ALJ's duty regarding development of the record was heightened because Plaintiff was uncounseled prior to seeking Appeals Council review, the ALJ was not required "to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning."  *See Sneed*, 88 F. App'x at 300; *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (noting that the ALJ must develop the record in a manner that is consistent with the material issues that are raised).  Because the ALJ took all steps that

Plaintiff and her representative asked of him with respect to obtaining medical records,[5] the record was adequately developed. This claim of error does not require reversal and remand.

RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by September 16, 2014. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[5] The Commissioner also obtained consultative examinations at the Government's expense. *See* 20 C.F.R. § 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled . . . , we may ask you to have one or more physical or mental examinations or tests.").

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED on this 2nd day of September, 2014.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE